UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

| | : | |
|---|---|---|
| STEVEN R. JARRETT | : | |
| | : | CASE NO. 1:08-CV-290 |
| Plaintiff, | : | |
| | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Doc. No. 24] |
| CSX TRANSPORTATION, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The Plaintiff-employee Steven R. Jarrett moves for partial summary judgment regarding whether Defendant-employer CSX Transportation Inc., ("CSX") is strictly liable for at least some of the injuries Jarrett sustained in a work related injury.[Doc. 24.] CSX opposes and moves for summary judgment in their favor. [Doc. 34.] For the following reasons, this Court **GRANTS** the Plaintiff Jarrett's motion seeking an order finding CSX strictly liable and **DENIES** the Defendant CSX's motion.

**I. Background**

Jarrett sued CSX claiming that CSX was responsible for an injury that occurred when Jarrett slipped on an air hose left on the floor in the bathroom of a locomotive that he worked on. [Doc. 24 at 1-2.]

*I.A. Arguments of the Parties*

The Plaintiff Jarrett says Defendant CSX is strictly liable for injuries he received in a February

-1-

Case No. 1:08-CV-290
Gwin, J.

2, 2007, fall that resulted after he stepped an air-hose located on a locomotive cab bathroom floor. Jarrett reasons that CSX violated the Locomotive Inspection Act and, as a result, is strictly liable. Although seeking summary judgment with regard to liability, Jarrett acknowledges that factual issues remain regarding what injury proximately resulted from the February 2, 2007, fall.

The Defendant CSX responds that Jarrett's own negligence was the sole cause of his fall and that there are material factual issues remain as to medical causation and these uncertainties should prevent this Court from granting Jarrett's motion.

*I.B. Facts*

At the time of the accident, Jarrett worked as a railroad conductor for the Defendant CSX. [Doc. 24, Ex. 1 at 9.] As a conductor, Jarrett worked a train traveling from Garrett, Indiana to Cleveland, Ohio. *Id.* at 10. On February 2, 2007, while making this usual trip from Garrett to Cleveland, Jarrett got up from his conductor's chair to use the locomotive's restroom. *Id.* at 15. The door to the restroom is a "half door," measuring around three-and-one-half feet to four feet up from the ground. *Id.* at 12. Inside the half door, a single step leads down onto a lower floor level where the toilet sits. *Id.* at 14.

Before entering the restroom, Jarrett "looked down into the toilet area . . . to make sure there wasn't any standing water." *Id.* at 15. Because of the half door, part of the restroom floor remained hidden from Jarrett's vantage point. *Id.* at 16. Jarrett stated that seeing the entire restroom floor would have been possible, however, if he had "laid down on [his] belly and looked down in there." *Id.* at 17. After looking down, Jarrett turned away from half door to back down the restroom.[1] *Id.*

---

[1] Jarrett stated that, "[i]n his estimation," backing down into the restroom was "the only way that you can get into that toilet." [Doc. 24, Ex. 1 at 16.]

Case No. 1:08-CV-290
Gwin, J.

at 15. Jarrett then stepped with his right foot down onto the single step inside the half door, and then stepped down with his left foot onto the lower level where the toilet sat. Id.

When Jarrett stepped down with his left foot he slipped and lost his balance.[2/] Jarrett stated that he stepped on an "object" on the restroom lower level floor. Id. When Jarrett lost his balance, he tried to catch his fall with his left hand, and then felt the impact of the slip on his left shoulder.[3/] Id. After the impact, Jarrett felt pain in his left arm. Id. at 18.[4/] balance, Jarrett looked to the toilet room floor and saw an air hose there.[5/] Id. at 15. Jarrett stated that the air hose caused his slip. Id. at 15. No one else witnessed Jarrett's slip.

Immediately after the slip, two representatives from CSX inspected the locomotive. Id. Ex. 2 at 10. Their inspection read:

> [F]ound one trainline hose laying on the floor in toilet compartment . . . . There were also 3 or 4 sealed crew packs laying on floor. The room was well lit. . . . Hoses and other tools are meant to be stored in the racks provided in the air compressor room.

Id. Ex. 3 at 2.

Jarrett continued to suffer pain for several days after the slip. Id. Ex. 1 at 22. On February 12, 2007, ten days after the slip, Dr. Alan McGee began treating Jarrett. Regarding the Plaintiff

---

[2/] Jarrett stated: "I stepped down with my right foot onto the step inside of the toilet room and when I stepped down with my left foot, . . . I stepped on an object that kind of took my feet like I was on a roller skate, basically out from under me." [Doc. 24, Ex. 1 at 15.]

[3/] Jarrett is unsure whether his left shoulder hit the half-door frame or an object within the restroom. Id.

[4/] Whether the pain was localized in Jarrett's left arm, or extended to his neck is not entirely clear from the record. Id. at 18; [Doc. 33, Ex. 1 at 4.] The parties do not dispute, however, Jarrett's near immediate pain in his arm.

[5/] Jarrett stated: "when I got myself to, so I could get back out of there I looked around and seen that there was an air hose laying in back of me, you know, that that's the object that I stepped on when I stepped down onto the deck of the toilet." [Doc. 24, Ex. 1 at 15.]

Case No. 1:08-CV-290
Gwin, J.

Jarrett's injuries, Dr. McGee gave the opinion that Jarrett's injuries were caused by his slip, but Dr. McGee could not speak conclusively as the precise extent of the injuries:

> Q. If you are asked about your opinion regarding cause of the pain in his neck and shoulders when he came to see you, what would that be?
>
> A. Again, as I stated earlier, based on the history that he gave me, based on the findings, his examination, review of his MRI, it is my opinion that the injuries sustained on February 2nd is clearly causally related to his complaints and his subsequent surgery.
>
> Q. Were some of the symptoms an aggravation of pre-existing conditions?
>
> A. Could have been, yes.
>
> Q. Do you have any opinions regarding the duration of his pain and symptoms?
>
> A. Associated before he came or what will happen from his injury on?
>
> Q. His injury on.
>
> A. I don't know. If you would have asked me that from the time of surgery, I would have told you three months to a year, we see that sometimes. I don't know what's going on with him now, so I really don't have a good opinion.
>
> Q: Doctor, the opinion you just gave on causation, that's also taking into account the 2001 cervical MRI you were shown today, as well as the X-ray study?
>
> A. Yes.
>
> Q. And the other medical records you were shown.
>
> A. Yes.

[Doc. 33, Ex. 1 at 14.] The Defendant CSX has produced no medical opinion contradicting Dr. McGee's opinion on causation.

## II. The Legal Standard for Summary Judgement

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on

Case No. 1:08-CV-290
Gwin, J.

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies this burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586. Nor can the nonmoving party "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*

Case No. 1:08-CV-290
Gwin, J.

*v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)); see also *Celotex,* 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III. A Federal Employers' Liability Act Cause of Action

The Federal Employers' Liability Act ("FELA") governs employee recovery for work related injuries within the railroad industry.[6] 45 U.S.C. §§ 51-60. The "prime purpose" of the FELA is the "protection of railroad employees." *Urie v. Thompson*, 337 U.S. 163, 191 (1949) (citations omitted). The FELA creates a statutory cause of action allowing an employee to recover for employer negligence that "in whole or in part" causes an employee's injury. 45 U.S.C. § 51.[7]

To supplement the FELA and to "facilitat[e] employee recovery," Congress enacted the Locomotive Inspection Act ("LIA").[8] *Urie,* 337 U.S. at 189, 191; 49 U.S.C. § 20701. The LIA requires that a locomotive must be "safe to operate without unnecessary danger of personal injury." *Id.* The LIA additionally empowers the Secretary of Transportation to proscribe regulations applicable to the railroad industry. When an employee can prove an employer has violated the LIA

---

[6] The statute was originally enacted in 1908, "when railroads were the nation's largest employer and railroad work was unusually hazardous." James A. Squires, *Regulating Safety Culture in the Railroad Industry: The Time Has Come for Broader Horizons*, 27 TRANSP. L.J. 93, 106 (2000). Because of the FELA, state workers compensation schemes do not apply to the railroad industry. *Id.*

[7] The FELA states: "a common carrier by railroad . . . shall be liable . . . for [an] injury or death resulting in whole or in part . . . from . . . any defect or insufficiency, due to [the carrier's] negligence, in its cars, engines, appliances, machinery, track, . . . or other equipment." 45 U.S.C. § 51.

[8] The Locomotive Inspection Act was formerly known as the Boiler Inspection Act. For ease of reading, all references to the Boiler Inspection Act will be identified as references to the Locomotive Inspection Act.

Case No. 1:08-CV-290
Gwin, J.

or a rule or regulation promulgated under the LIA, this "is effective to show negligence as a matter of law"; the employee need not show that the defendant employer's conduct was unreasonable. *Urie*, 337 U.S. at 189;[9/] *see Lilly v. Grand Trunk Western R. Co.*, 317 U.S. 481, 488 (1943).[10/] So while the FELA generally requires that negligence be shown, a violation of LIA and its regulations suffices to prove negligence.

When creating this FELA statutory cause of action, Congress sought to ensure an employee's right to a jury determination on issues of employer fault and causation. *Rogers v. Missouri Pacific R.R. Co.* 352 U.S. 500, 508 (1957). To accomplish this goal, the FELA abolished contributory negligence as an absolute bar to employee recovery, but instead generally uses a comparative negligence allocation based upon the employee's own negligence. 49 U.S.C. § 53. When, however, an employee's injury was caused by an employer's violation of a statute enacted for the safety of employees, the employee cannot be found contributorily negligent. *Id.* The LIA operates as such a statute for the safety of employees. *Baltimore & O. R. Co. v. Groeger*, 266 U.S. 521, 528 (1925).

An employee can recover under the FELA, therefore, by showing that 1) the employer violated a statutory provision of the LIA or safety regulations promulgated under LIA authority, and 2) the employee suffered injuries "resulting in whole or in part" from the statutory violation. 45

---

[9/] This Court recognizes the suggestion in *United States v. Illinois Central R. Co.*, 170 F. 542, 548 (6th Cir. 1909) that the employee cannot recover unless the employee can demonstrate that the alleged defect existed at the time the locomotive was started in transit. That decision, however, predates and contradicts subsequent Supreme Court opinions holding that the reasonableness of the employer's conduct–such as a lack of notice or the employer's reasonable diligence–does no alter the negligence per se consequence of a statutory violation. *See Urie*, 337 U.S. 163, 189; *Lilly v. Grand Trunk Western R. Co.*, 317 U.S. 481, 485 (1943) (discussing the employer's "absolute and *continuing* duty to maintain the locomotive" (emphasis added) (citations omitted)).

[10/] In *Lilly*, the Court analyzed the effect of a rule promulgated by the Interstate Commerce Commission under the authority of the Boiler Inspection Act, which was the former LIA, and found that the rule carried the same statutory authority as the statute itself. *Lilly*, 317 U.S. at 489 ("Adopted in the exercise of the Commission's authority, [the rule] acquires the force of law and becomes an integral part of the Act.")

Case No. 1:08-CV-290
Gwin, J.

U.S.C. § 51; *Richards v. Consolidated Rail Corporation,* 330 F.3d 428, 432 (6th Cir. 2003).

*III.A.  Violation of a Statutory Provision*

As noted above, when a plaintiff employee can show a violation of the LIA or a rule or regulation promulgated under the authority of the LIA, this violation establishes negligence per se. Relevant to Jarrett's motion for summary judgment, under the authority of the LIA, the Secretary of Transportation has promulgated Rule 49 C.F.R. section 229.119(c) which states:

> Floors of cabs, passageways, and compartments shall be kept free from . . . waste or any obstruction that creates a slipping[ or] tripping . . . hazard.

49 C.F.R. § 229.119(c).  The mere presence of waste on the floor does not constitute a violation of the regulation; rather the waste must "*create* a slipping[ or] tripping . . . hazard." *Id.* (emphasis added); *Gregory v. Missouri Pacific Railroad Co.*, 32 F.3d 160 (5th Cir. 1994).

In *Haworth v. Burlington Northern and Santa Fe Railway Co.*, 281 F.Supp.2d 1207, 1213 (E.D. Wash. 2003), the district court granted summary judgment to the employee after finding that, section 229.119(c) had been violated when an air hose was found on the floor and three of the employer's workers admitted that the air hose was a tripping hazard.  Courts have found the presence of other types of objects on the floor legally sufficient to establish a jury question whether an object created a tripping hazard.  *See, e.g.*, *Topping v. CSX Transportation Inc.*, 1 F.3d 260, 261 (4th Cir. 1993) (holding trial court did not err in submitting to the jury the question of whether a "loose metal object" made the locomotive unsafe to operate under the LIA).

While the evidence on record in this case is not as strong as the evidence presented in *Haworth*, the Plaintiff Jarrett's testimony on the presence of the air hose is uncontradicted and corroborated by CSX's post-incident inspection.  Jarrett said that the air hose took his feet out from

Case No. 1:08-CV-290
Gwin, J.

underneath him like a "roller skate." [Doc. 24, Ex. 1 at 15.] In CSX's own statement of the facts of this case, they state that an "air hose was laying on the restroom floor," and that when Jarrett "stepped onto the air hose, it *caused* him to slip and pitch forward." [Doc. 34 at 3 (emphasis added).] The occurrence and descriptions of the slip tend to show that the air hose created a tripping hazard.

The Defendant CSX's own inspection report stated that the air hoses were not to be kept on the floor. CSX makes no argument and points to nothing in the record that would suggest that the air hose on the floor of the restroom did not constitute a tripping hazard. Accordingly, this Court finds that the record supports Jarrett's contention that the air hose was on the restroom floor and that the air hose constituted a tripping hazard establishing a violation of Rule 229.119(c).[11]

*III.B. Causation under the FELA*

The FELA states that an employee can recover for injuries caused "in whole or in part," 45 U.S.C. § 51, by the employer's violation of the LIA. In *Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 506 (1957) (emphasis added), the Court held that, under FELA, "the test of a jury case is simply whether the proofs justify with reason the conclusion that the employer negligence played *any part, even the slightest*, in producing the injury or death for which damages are sought." The Court went on to note that Congress's intention in passing the law was "to secure the right to jury determination" on the issues of employer fault and causation. *Id.* at 508.

Courts have disagreed whether the above quoted language in *Rogers* creates a standard of causation in FELA suits that is lower than the traditional common law proximate causation standard. *Norfolk Southern Ry. Co.*,127 S. Ct. 799 (2007). In *Sorrell*, two non-majority concurrences

---

[11] CSX does argue that Jarrett should have made certain the floor was clear before stepping down to the restroom. [Doc. 34 at 10.] As discussed below, however, this argument introduces elements of employee due care that a court is statutorily precluded from considering.

Case No. 1:08-CV-290
Gwin, J.

addressed the issue. *See id.* at 809-810 (Souter, J. concurring (arguing that *Rogers* "did not address, much less alter, existing law governing the degree of causation necessary")); *but cf.*, *id.* at 812 (Ginsburg, J., concurring (arguing that, under *Rogers*, the "causation standard in FELA actions is more 'relaxed' than in tort litigation generally")). Prior to *Sorrell*, the Sixth Circuit had characterized the causation standard as "relaxed." *Richards*, 330 F.3d at 434 (noting that "a plaintiff alleging a FELA violation [must] offer 'more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more'" (quoting *Aparacio v. Norfolk & W. Ry. Co.*, 84, F.3d 803, 810 (6th Cir. 1996)).

If this Court were deciding whether Jarrett had presented enough evidence to warrant jury consideration of his claim, the relaxed standard of causation announced in *Richards* would control. This case, however, concerns an employee's motion for summary judgment and not whether the employee has established causation to the degree necessary to establish a jury question. The modified causation standard was meant as a shield against an employer's motion for summary judgment, not a sword for an employee's motion for summary judgment. The proximate cause standard for an employee's motion for summary judgment was not modified by *Rogers*, and remains the traditional common law standard.[12]

In the traditional common law definition of proximate cause, the Defendant CSX's violation

---

[12] This Court is applying different standards of causation for the summary judgment of employers and employees. In *Sorrell*, the Supreme Court held that it was improper to apply different standards of causation in jury instructions because the application of two different standards departs from common law practice. 127 U.S. at 807. The Supreme Court strongly cautioned against departures from the common law when the common law was not "expressly rejected" in the statute. *Id.* (citation omitted). *Sorrell* did not expressly forbid the use of different standards generally, but merely cautioned against departures from the common law without statutory authorization.
Here, however, the Sixth Circuit has already held that the standard of causation for a defendant's motion for summary judgment is different than the common law proximate cause standard. *Richards*, 330 F.3d at 437. Consistent with *Sorrell*, this Court will leave undisturbed the common law proximate causation standard under which a plaintiff employee's motion for summary judgment is to be evaluated.

-10-

Case No. 1:08-CV-290
Gwin, J.

of the Rule caused Jarrett's injury. Jarrett stated that he slipped on the air hose, and CSX points to no issue of material fact on causation–their own statement of facts states: "[a]s Plaintiff's left foot stepped onto the air hose, it *caused* him to slip and pitch forward." [Doc. 34 at 3 (emphasis added).] Here, the record shows that Jarrett had, at the least, near immediate pain in his left arm. The slip proximately caused some injury. While Jarrett has not clearly established the extent of his injuries, Plaintiff Jarrett did not move this Court to rule on the extent of his injury.

*III.C. The Sole Proximate Cause Affirmative Defense*

While the FELA does not permit the affirmative defense of contributory negligence to bar an employee's claim, courts have developed an affirmative defense of "sole proximate cause." *Toth v. Grand Trunk Railroad*, 306 F.3d 335, 351 (6th Cir. 2002). The *Toth* court upheld the trial court's instruction allowing the jury to find the employer not liable if the employee's negligence was the sole proximate cause of the injury. *Id.* at 351-352. The court affirmed this instruction when the employer proffered the inconsistent testimony of the employee regarding the events of the injury, the impossibility of the employee's injury if he had been properly following safety standards, and circumstantial evidence that the instrumentality of the injury could not have been defective in the way described by the employee. *Id.* at 352.

In arguing for the sole proximate cause defense, the Defendant CSX argues that their employee guidelines require employees to insure that where they step is clear, [Doc. 24, Ex. 1 at 16,] and that therefore Jarrett should have checked to make sure the restroom floor was clear before climbing down the step to the lower level.[13/] Theoretically, but for Jarrett's negligence in failing to

---

[13/] CSX points to testimony in Jarrett's deposition where Jarrett admitted that he could have seen the air hose on the floor of the restroom if he had gotten down on his stomach and looked in through the half door before backing
(continued...)

Case No. 1:08-CV-290
Gwin, J.

check the restroom floor, he would not have slipped on the air hose.[14] Accepting this argument, however, would allow CSX's employee rules to supersede Congress's statutory scheme for railroad work related injuries. Holding that a failure to follow an employee rule was the sole proximate cause of an injury would completely undercut Congress' decision to make employer's strictly liable for a violation of the LIA.

The Defendant CSX has not brought forth enough evidence to sufficiently establish a jury question as to whether the Plaintiff Jarrett was the sole proximate cause of his injury. The *Toth* instruction was based in part on evidence showing that the instrumentality of the injury could not have been defective in the way alleged by the employee. Here, however, CSX points to no evidence in the record disputing the presence of the hose- according to CSX's own statement of the facts, the air hose was on the floor and Jarrett tripped on it.

### IV. Conclusion

As required to recover under an FELA action alleging a violation of the LIA, the record shows that, 1) the Defendant CSX violated the LIA and 2) the violation of the LIA caused an injury to the Plaintiff Jarrett. This Court does not address the extent of the Plaintiff Jarrett's injuries caused

---

[13]/(...continued)
down. [Doc. 34, Ex. 1 at 22-23.]

[14]/ Jarrett's negligence is only assumed to clearly explain CSX's argument. This Court makes no ruling on that issue because Jarrett's negligence is irrelevant for the purposes of this motion.

Case No. 1:08-CV-290
Gwin, J.

by the slip. Accordingly, this Court **GRANTS** the Plaintiff Jarrett's motion for summary judgment

on the issue of liability.


Dated: September 10, 2008                    s/      *James S. Gwin*
                                                                             JAMES S. GWIN
                                                                             UNITED   STATES   DISTRICT   JUDGE